**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| Marvin Neros,<br><br>       Plaintiff,<br><br>vs.<br><br>Comm. of Social Security,<br><br>       Defendant. | No. CV 11-1971-PHX-JAT<br><br>**ORDER** |

Plaintiff applied for social security disability benefits. Defendant denied the claim for benefits. Plaintiff now appeals that denial.

**I.   Review of Administrative Law Judge's (ALJ) Decision**

The Court will not set aside the Commissioner's decision unless: (1) the findings of fact are not supported by substantial evidence in the record, or (2) the decision is based on a legal error. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). In determining whether substantial evidence supports the Commissioner's decision, the court must consider the record as a whole and review evidence both supporting and detracting from the decision. *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). The ALJ's role is to make credibility determinations and to resolve conflicts in medical testimony. *Andrews*, 53 F.3d at 1039. If the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, then the court will uphold the decision. *Id.* at 1040. However, if the ALJ applied improper legal standards, the court must set aside a decision even if it is supported by substantial evidence. *See Ceguerra v. Sec'y of Health & Human*

*Servs.*, 993 F.2d 735, 739 (9th Cir. 1991).

The claimant bears the initial burden to prove that she qualifies for disability benefits under the Social Security Act. *Andrews*, 53 F.3d at 1040. A claimant is disabled if she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).

*Thomson v. Astrue*, 2009 WL 1312034, *2 (D. Ariz. May 11, 2009).

The Social Security regulations set forth a five-step sequential process for evaluating disability claims. 20 C.F.R. § 404.1520(a) (4); *see also Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998). A finding of "not disabled" at any step in the sequential process will end the inquiry. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at the first four steps, but the burden shifts to the Commissioner at the final step. *Reddick*, 157 F.3d at 721. The five steps are as follows:

1. First, the ALJ determines whether the claimant is "doing substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled.

2. If the claimant is not gainfully employed, the ALJ next determines whether the claimant has a "severe medically determinable physical or mental impairment." 20 C.F.R. § 404.1520(a)(4)(ii). To be considered severe, the impairment must "significantly limit[ ] [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Basic work activities are the "abilities and aptitudes to do most jobs," such as lifting, carrying, reaching, understanding, carrying out and remembering simple instructions, responding appropriately to co-workers, and dealing with changes in routine. 20 C.F.R. § 404.1521(b). Further, the impairment must either have lasted for "a continuous period of at least twelve months," be expected to last for such a period, or be expected "to result in death." 20 C.F.R. § 404.1509 (incorporated by reference in 20 C.F.R. § 404.1520(a)(4)(ii)). The "step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). If the claimant does not have a severe impairment, then the claimant is not disabled.

3. Having found a severe impairment, the ALJ next determines whether the impairment "meets or equals" one of the impairments listed in the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is found disabled without further inquiry. If not, before proceeding to the next step, the ALJ will make a finding regarding the claimant's "residual functional capacity based on all the relevant medical and other evidence in [the] case record." 20 C.F.R. § 404.1520(e). A claimant's "residual functional capacity" is the most that he can still do despite all of his impairments, including those that are not severe, and any related symptoms. 20 C.F.R. § 404.1545(a)(1).

4. At step four, the ALJ determines whether, despite the impairments, the claimant can still perform "past relevant work." 20 C.F.R. § 404.1520(a)(4)(iv). To make this determination, the ALJ compares its "residual functional capacity assessment ... with the physical and mental demands of [the claimant's] past relevant work." 20 C.F.R. § 404.1520(f). If the claimant can still perform the kind of work that he previously engaged in, the claimant is not disabled. Otherwise, the ALJ proceeds to the final step.

> 5. At the final step, the ALJ determines whether the claimant "can make an adjustment to other work" that exists in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the ALJ considers the claimant's "residual functional capacity" and his "age, education, and work experience." 20 C.F.R. § 404.1520(g)(1). If the claimant can perform other work, he is not disabled. If the claimant cannot perform other work, he will be found disabled. As previously noted, the Commissioner bears the burden of proving that the claimant can perform other work that exists in the national economy. *Reddick*, 157 F.3d at 721.
>
> In evaluating the claimant's disability under this five-step process, the ALJ must consider all evidence in the case record. 20 C.F.R. § 404.1520(a)(3); 20 C.F.R. § 404.1520b. This includes medical opinions, records, self-reported symptoms, and third-party reporting. 20 C.F.R. § 404.1527; 20 C.F.R. § 404.1529; SSR 06–3p.

*Johnston v. Astrue*, 2012 WL 3108838, *3-4 (D. Ariz. July 31, 2012).

## II.  Discussion

Plaintiff argues that the ALJ committed five separate errors, each of which requires this Court to reverse the denial of benefits. Defendant argues that there are no errors and that the decision should be affirmed. The Court will address each of the five alleged errors in turn.

### A.   The ALJ's Step Three Conclusion

At Step 1, the ALJ determined that Plaintiff had not performed substantial gainful activity since 2007. Doc. 9-3 at 22.[1] At Step 2, the ALJ found that Plaintiff had the following severe impairments: "schizophrenia (paranoid type), deaf in right ear, and lumbar degenerative disc disease (20 CFR 404.1520(c) and 416.920(c))." *Id*. at 23. At Step 3, the ALJ concluded, "The [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404,1520(d), 404.1526, 416.920(d), 416.925 and 416.926)." *Id*. at 24. The ALJ reached this conclusion at Step 3 finding that, "while adhering to his medication regimen, [Plaintiff's] schizophrenia no longer equals 12.03. I do not find there is any period when the Listing was equaled for 12 continuous months." *Id.* at 25. Plaintiff appeals this

---

[1] For purposes of this Order, the Court has used the page numbers in the electronic record, which are one number different than the paper record.

- 3 -

1 conclusion at Step 3.

2 Plaintiff titles this section of his opening brief, "The ALJ's Step Five Finding, Based on Dr. Jasinski's Testimony Is Not Supported With Substantial Evidence. Substantial Evidence Contradicts Dr. Jasinski's Testimony and Conclusions." Doc. 10 at 15. This section then goes on to discuss the medical evidence and concludes by stating, "Because [Plaintiff's] condition remained 'serious' throughout the period under consideration, a finding that his impairment equaled the Listing throughout the period under consideration is warranted. ... Once a disability finding is made at step three, there is no need to consider [Plaintiff's] additional arguments." *Id.* at 18-19. Thus, the Court has treated this argument as an appeal of the ALJ's Step 3 conclusion.

Plaintiff's second argument similarly challenges the ALJ's consideration and weighing of the medical evidence. Plaintiff argues that the ALJ erred in not giving Dr. Gregson's opinion greater weight than Dr. Jasinski's opinions. Because the ALJ's evaluation of the medical evidence overlaps, the Court will consider Plaintiff's first two alleged errors together.

Plaintiff recounts that the ALJ must credit a treating physician's opinion over a non-treating physician's opinion, unless the ALJ gives specific and legitimate reasons for crediting the non-treating physician's opinion over the treating physician's opinion. Doc. 10 at 20 citing *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). In this case, Dr. Gregson is the doctor whose opinion Plaintiff argues the ALJ was required to credit and Dr. Jasinski is the doctor whose opinion Plaintiff argues the ALJ should have rejected.[2]

---

[2] Plaintiff has characterized Dr. Gregson as a treating physician and, for purposes of this Order, the Court has applied the treating physician standards to Dr. Gregson. However, this characterization is not supported by the ALJ's opinion. Specifically, the ALJ calls Dr. Gregson an "examining" physician (Doc. 9-3 at 23) and the ALJ's opinion suggests that Plaintiff saw Dr. Gregson only once, in March 2008, for a consultation. *Id.* In *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001), the Court of Appeals identified three kinds of physicians, "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or

- 4 -

The ALJ gave specific legitimate reasons for rejecting Dr. Gregson's opinion. First, Dr. Gregson saw Plaintiff in March 2008, and gave him a Global Assessment of Functioning (GAF) of 25; however, Plaintiff's other medical providers at the Veterans Administration Medical Center and at Magellan gave him a GAF score of 40 in August 2008 and 60 in March 2009. Doc. 9-3 at 23. Second, the ALJ mentioned that Plaintiff gave Dr. Gregson a history that was not supported by the record; specifically, Plaintiff told Dr. Gregson that he had two psychiatric hospitalizations but there are no medical records to support this statement. *Id.* at 24. Third, Plaintiff told Dr. Gregson that his symptoms were worse when he was not on his medication and Plaintiff told Dr. Gregson that he had not taken his medication on the day of the examination; thus, the ALJ discredited Dr. Gregson's evaluation because Plaintiff was not on his medication on the day of the examination. *Id.* at 27. Fourth, the ALJ noted that Plaintiff was abusing substances at the time of Dr. Gregson's examination; which could have impacted Plaintiff's symptoms at the time of the examination. *Id.*

The Court finds that all of the above reasons are specific and legitimate reasons to discredit Dr. Gregson's opinions. Therefore, the Court will affirm the decision of the ALJ on this issue.

Plaintiff also argues that the ALJ's decision that Plaintiff is not disabled is not supported by the record as a whole. Doc. 10 at 16. Generally, as discussed above, this Court should affirm the ALJ's decision if it is supported by substantial evidence in the record. *Magallanes*, 881 F.2d at 750.

Here the ALJ's decision is supported by substantial evidence of record. The ALJ noted that the treatment providers at the Veterans Administration and at Magellan found Plaintiff to have a GAF score consistent with the ALJ's conclusion. Doc. 9-3 at 23. Additionally, the ALJ relied on Dr. Jasinski's testimony, which was based in part on the

---

reviewing] physicians). " (internal citation omitted). In this case, it appears the ALJ was correct, and Dr. Gregson is more correctly categorized as an examining physician.

- 5 -

1 findings of the Magellan doctors, that Plaintiff was stable when on his medications. *Id*. at
2 23.

3 Next, the ALJ's decision is supported by the fact that, "none of the [Plaintiff's]
4 treating physicians has provided a formal medical source statement on the [Plaintiff's]
5 physical residual functional capacity." *Id*. at 27. Thus, the ALJ's conclusion at Step 3 is not
6 inconsistent with any of Plaintiff's treating physician's opinions.

7 Further, Dr. Jasinski's testimony supported the ALJ's decision. Specifically, Dr.
8 Jasinski concluded that Plaintiff did not meet in severity the section 12.03 listing. Doc. 9-3
9 at 25. Also, Dr. Jasinski's concluded that the times when Plaintiff's condition deteriorated
10 was when Plaintiff did not take his medication, or abused substances, or both. *Id.* at 27.

11 Plaintiff argues that this Court should reject the ALJ's reliance on Dr. Jasinski's
12 opinion because Dr. Jasinski's opinion is also not supported by the record as a whole. Doc.
13 10 at 18. However, the ALJ is responsible for resolving conflicts in the medical testimony.
14 *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Moreover, this Court cannot
15 substitute its "opinion" for the opinion of a doctor based on the Court's review of the record.

16 Finally, two additional doctors' opinion's support the ALJ's conclusions. An
17 examining physician, Dr. Holland, found that Plaintiff could perform a wide range of
18 medium work. Doc. 9-3 at 27. And, Y. Shetty, M.D., also found that Plaintiff could perform
19 a wide range of medium work. *Id*. The ALJ specifically noted that she gave "substantial
20 weight" to these two medical opinions. *Id*.

21 Based on all of the foregoing, the Court finds that the ALJ's decision is supported by
22 substantial evidence in the record. Thus, the Court will not reverse the ALJ's decision on
23 this basis.

24     **B.    State Agency's Findings**

25 Next, Plaintiff argues that the ALJ erred in reaching a different conclusion than the
26 State of Arizona regarding Plaintiff's qualification for assistance. Doc. 10 at 20. Plaintiff
27 argues that under the C.F.R., other governmental decisions should be considered by the ALJ,
28 the ALJ must treat opinions of state doctors as expert opinions of nonexamining sources, and

- 6 -

1 that the ALJ must explain the weight given to those opinions. *Id*. at 21.

2 In her opinion, the ALJ did all of the things Plaintiff argues she must do. Specifically, the ALJ discussed the State agency doctor's opinion, explained the weight she gave it, and concluded that she rejected it. Doc. 9-3 at 28. Therefore, the Court finds no error.

### C. *Dictionary of Occupational Titles*

In his fourth claim of error, Plaintiff argues that the ALJ was required to determine whether the vocational expert's testimony and conclusions were consistent with the *Dictionary of Occupational Titles*. Doc. 10 at 21-22. Plaintiff further argues that the ALJ failed to meet this requirement.

Plaintiff acknowledges that the ALJ specifically asked the vocational expert whether there was any conflict between his conclusions and the *Dictionary of Occupational Titles*. Doc. 10 at 22. Based on the vocational expert's testimony, the ALJ held, "Pursuant to SSR 00-4p, the vocational expert's testimony is consistent with the information contained in the *Dictionary of Occupational Titles*." Doc. 9-3 at 29. Nonetheless, Plaintiff argues that the ALJ's inquiry and holding were inadequate because the ALJ used different words to describe Plaintiff's symptoms than the words found in the *Dictionary of Occupational Titles*. Plaintiff then concludes that this difference in word choice was error because there was, in fact, a conflict between the vocational expert's testimony and the *Dictionary of Occupational Titles* that the ALJ did not explain. Doc. 10 at 22.

First, the Court disagrees with Plaintiff that the ALJ using words that are not identical to the words in the *Dictionary of Occupational Titles* means that there is a conflict with the *Dictionary of Occupational Titles*. Second, Plaintiff has failed to show that the ALJ's conclusion that there was no conflict was error. Plaintiff's entire argument is, "The VE's testimony conflicted with the [*Dictionary of Occupational Titles*], ... ." Doc. 10 at 22. A conclusory assertion does not show that the ALJ's decision is inconsistent with the *Dictionary of Occupational Titles*. As a result, the decision of the ALJ will not be reversed on this point.

- 7 -

### D.     **Plaintiff's Testimony Regarding his Symptoms**

Finally, both parties agree that the ALJ may discount a claimant's subjective statements regarding his symptoms if the ALJ provides clear and convincing reasons for doing so, supported by substantial evidence in the record for her conclusion. Doc. 14 at 9; Doc. 10 at 23.[3] Plaintiff argues that the ALJ did not give clear and convincing reasons for discrediting his testimony.

Preliminarily, the ALJ found that Plaintiff had medically determinable impairments that could reasonable be expected to cause Plaintiff's claimed symptoms. Doc. 9-3 at 26; *see also Ballard*, 2000 WL 1899797, n.1. The ALJ then discredited the Plaintiff's testimony regarding his symptoms for the following reasons.

First, the ALJ notes that Plaintiff testified that he last used drugs in 2007, but Plaintiff told Dr. Gregson that he last used drugs on January 31, 2008. Doc. 9-3 at 26. Further, Plaintiff tested positive for cocaine in February 2008. Doc. 9-3 at 26. Finally, in September 2008, the Veterans Administration treatment providers were still diagnosing Plaintiff with cocaine dependance, substance abuse and polysubstance dependence. Doc. 9-3 at 26. Thus, Plaintiff's testimony was inconsistent with his own prior statements and the medical records.

Second, Plaintiff testified that he hears voices all the time and has racing thoughts. Doc. 9-3 at 16. However, the medical records showed that Plaintiff's symptoms were managed with his medications. *Id.* Specifically, in July 2008 Plaintiff was not having intrusive thoughts. *Id.* Plaintiff told his treatment providers that he believed his medications were controlling his psychosis. *Id.* Later in 2008, Plaintiff had no obvious sign of problems and did not report any problems. *Id.* Thus, Plaintiff's testimony at the hearing was inconsistent with his prior statements and the medical evidence.

The Court finds that the foregoing findings by the ALJ are clear and convincing

---

[3] Because the parties have agreed, the Court will apply the "clear and convincing" standard in this case. However, other courts have concluded that the ALJ need only make "specific findings" supported by the record to explain the credibility determination. *Ballard v. Apfel*, 2000 WL 1899797, n. 1 (C.D. Cal. Dec. 19, 2000).

- 8 -

reasons to discredit Plaintiff's symptom testimony. Therefore, the Court will not reverse the decision of the ALJ on this issue.

### III.  Conclusion

The Court having considered Plaintiff's arguments and finding no error,

**IT IS ORDERED** that the decision of the ALJ is affirmed and the Clerk of the Court shall enter judgment accordingly.[4]

DATED this 11th day of February, 2013.

James A. Teilborg
United States District Judge

---

[4] To the extent a mandate is required, the judgment shall serve as the mandate in this case.